**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**


**WILLIAM TILLERY, *et al.*,**      )
                                 )
        Plaintiffs,         )
                                 )
        v.                )         Civil Action No. CBD-07-1092
                                 )
**HARRY L. BORDEN, *et al.*,**      )
                                 )
        Defendants.     )


## MEMORANDUM OPINION

### I.    Factual Background and Procedural Posture

This case arises from a series of real property transfers made among the involved parties and improvements made to the property. Plaintiffs assert eighteen assorted causes of action ranging from fraud, to injurious falsehood, to violations of Maryland and Federal statutes.

Presently before the Court are the "Resubmitted Motion for Summary Judgment of Defendants John J. Harrison and Casey, Earp & Harrison Realty, T/A Realty Executives Main Street, USA and Memorandum in Support Thereof" ("Defendants' Motion")(Docket Item No. 102), the "Resubmitted Motion for Summary Judgment of Defendant Harry Borden" ("Defendant Borden's Motion")(Docket Item No. 103), and the "Motion for Summary Judgment by Lehman Brothers Bank, FSB (n/k/a Aurora Bank, FSB)" ("Defendant Lehman Brothers' Motion")(Docket Item No. 90). The Court has reviewed the motions filed by Defendants and the memoranda thereto. No hearing is deemed necessary. Local Rule 105.6 (D. Md.). The Court hereby grants the motions filed by Defendants.

In January 2005, a foreclosure action was commenced against Plaintiffs' home at 3910 Oaklawn Road (the "Property"). Plaintiffs were owners of the Property in fee simple, but one of

Plaintiffs' mortgages was in arrears totaling $34,829.97. Plaintiffs had previously filed for Chapter 13 bankruptcy, which was dismissed on March 31, 2004. The bankruptcy proceeding staved off foreclosure, however when it was dismissed the threat of foreclosure loomed again. In November 2004, Plaintiffs' lawyer, John Burns, introduced them to John J. Harrison, a broker for Casey, Earp and Harrison Realty, Inc., t/a Realty Executives Main Street, USA ("Realty Executives") and president of John J. Harrison Company, Inc. ("The Harrison Company"). Mr. Harrison wrote to Mr. Burns, valuing the Property at $300,000, but because it needed significant repairs, it was then only worth $220,000. Defendants' Exhibit 6, J. J. Harrison Letter.

On February 1, 2005, Plaintiffs received notice that, as a result of impending foreclosure, the Property would be sold at public auction on February 14, 2005. In an attempt to prevent foreclosure, Plainitffs pursued an agreement with The Harrison Company. Plaintiffs' Exhibit 5, Tillery Depo. at 28:4-21. On February 13, 2005, Plaintiffs and The Harrison Company entered into a contract of sale for the Property, and Realty Executives brokered the transaction. The Harrison Company agreed to purchase the home for $260,000. The contract included several addendums:

- Purchaser agreed to "increase the price of the purchase price by $30,000 in the form of a second trust which the sellers will hold at 7% interest per annum." Defendants' Exhibit 7, General Addendum No. 1 to Tillery Residential Contract of Sale.

- Advising the sellers to "seek professional legal and financial advice prior to signing this contract and addendums." Affirming that the sellers were "legally competent to enter into legal transactions." Lastly, the contract was "contingent on approval from the seller's attorney." Defendants' Exhibit 8, General Addendum No. 1 to Tillery Residential Contract of Sale.

- Sellers were "given the option of selling the property on the open market and have elected not to do so. Sellers understand that this property is being sold under market value for investment purposes and may be resold in the future to a third

party for profit." Defendants' Exhibit 9, General Addendum No. 1 to Tillery Residential Contract of Sale.

- Purchaser assumes responsibility for the payments on the first and second deeds of trust encumbering the property. Defendants' Exhibit 10, General Addendum No. 1 to Tillery Residential Contract of Sale.

- Sellers credit the purchaser $8126.21 for repairs and the purchaser agrees to make the repairs within one year. Defendants' Exhibit 11, General Addendum No. 1 to Tillery Residential Contract of Sale.

- The deed will not be recorded and the transaction will be held in escrow until May 1, 2005. At that time the transaction would be null and void unless the parties proceed to settlement. "Seller has the right to re-sell the above property to a third party on or before May 1, 2005." Defendants' Exhibit 12, General Addendum No. 1 to Tillery Residential Contract of Sale.

The parties proceeded to closing the following day, February 14, 2005. At settlement, Plaintiffs executed a deed transferring title of the property to The Harrison Company.

The proceeds of the sale were used to pay off the mortgages encumbering the property. The Harrison Company immediately paid the foreclosing lender $34,829.97 which ceased the foreclosure on March 3, 2005. Defendants' Exhibit 5, Tillery Depo. at 93:15-95:8. The Harrison Company also paid $15,146.44, satisfying the second mortgage encumbering the Property.

On April 5, 2005, The Harrison Company sold the Property to Harry Borden for $350,000. Realty Executives also served as the broker for this transaction. Subsequently, The Harrison Company paid $159,368.79 to completely satisfy the first mortgage encumbering the property. The Harrison Company also paid Plaintiffs' $25,143.83 directly to partially satisfy Mr. Tillery's outstanding child support obligations. Lastly, The Harrison Company paid John Burns, $15,683 to satisfy the outstanding legal bills owed by Plaintiffs.

Also on April 5, 2005, Plaintiffs and Harry Borden entered into a lease and three-year option agreement. The monthly rent for the Property was set at $2900, but The Harrison

Company paid Plaintiffs $8,000 to apply as a $2,000 per month rent subsidy for June 2005 through September 2005.  Plaintiffs paid Mr. Borden $5,469 in consideration for a three-year option agreement on the Property.  For three years Plaintiffs had the option of re-purchasing the Property for a settled price of $402,220.

**II.    Parties' Arguments**

Defendants move for summary judgment on all claims against them.  They argue that, as a matter of law, Plaintiffs cannot prevail on the nine claims asserted against them.  Their specific arguments against each claim are best summarized when analyzing the merits of each claim.

Plaintiffs have presented little in opposition.  Their response repeats some of the allegation in the Amended Complaint, but fails to respond specifically to either motion.  They do not include any record evidence in support of their arguments, nor do they refer to Defendants' Exhibits.

At the initiation of this suit in federal court, Plaintiffs filed a verified complaint.  In large measure, a verified complaint is intended to provide the same evidentiary foundations as an affidavit.  A properly verified complaint can provide a sufficient basis to oppose a motion for summary judgment.  Pursuant to Fed. R. Civ. P. 56(e) an affidavit must "set out facts that would admissible in evidence, and show that the affiant is competent to testify on the matters stated."  Assuming the Court were to give credence to the original verified Complaint, the verification is inadequate in that it merely states that the information set forth therein is believed to be "true and correct to the best of our knowledge, information and belief."  Such an affidavit, or verification, is inadequate to withstand a motion for summary judgment.  Information "believed" to be "true and correct" is not "admissible in evidence."

The Amended Complaint is even more problematic. Unlike the original Complaint, the Amended Complaint is not signed, nor has it been filed in accordance with the "Electronic Filing Requirements and Procedures for Civil Cases" of this Court. See Section III(F)(4). Plaintiffs had several methods by which to file a properly verified Amended Complaint, none of which were complied with. Accordingly, Plaintiffs have presented no record evidence in opposition to the motions for judgment. As stated in the Fed. R. Civ. P. 56 advisory committee notes (1963): "The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see if there is a genuine need for trial." Plaintiffs are left with the conclusory allegations in the body of the Amended Complaint.

Plaintiffs fail to make any significant showing of which material facts remain in dispute. Their inattention to Defendants' specific arguments and failure to respond directly are particularly startling considering Plaintiffs were given a second chance to oppose summary judgment.

## III.    Standard for Summary Judgment

Federal Rule of Civil Procedure 56 provides the standard for summary judgment. The rule provides that "the judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). Essentially, "the moving party is 'entitled to judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Vital to this standard is that the disputed fact must be material; "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported

motion for summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original). A fact is "material" when the result of a dispute about it could affect the outcome of the suit under governing law. Id. at 248. A dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Id. The moving party must demonstrate that the non-moving party cannot make his case on more than just the pleadings, that the non-moving party could not point to specific facts that would allow a reasonable jury to find in its favor. See Celotex Corp., 477 U.S. at 324 (1986).

In considering the facts before it for summary judgment, the Court must believe all evidence from the non-moving party, and "all justifiable inferences are to be drawn in his [or her] favor." Anderson, 477 U.S. at 255. For summary judgment, the Court must "view the evidence in the light most favorable to … the nonmovant." Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 645 (4th Cir. 2002). See also, United States v. Diebold, Inc., 369 U.S. 654 (1962); Gill v. Rollins Protective Servs. Co., 773 F.2d 592 (4th Cir. 1985). However, "while the facts and all reasonable inferences drawn therefrom must be viewed in the light most favorable to the party opposing the motion… its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Levy v. Mote, 104 F. Supp. 2d 538, 542-43 (D. Md. 2000) (internal citations omitted).

To prevail on summary judgment, Defendants must demonstrate that there is no material issue of fact in dispute - that no reasonable jury could find for Plaintiffs because, as a matter of law, he has not satisfied at least one element of his claim or the applicability of a complete affirmative defense.

**IV.    Choice of Law**

Because this case comes to the Court by way of diversity jurisdiction, 28 U.S.C. § 1332, the analysis proceeds using Federal law for procedural issues and Maryland state law for substantive issues.  Gasperini v. Ctr. for Humanities, Inc., 518 U.S. 415, 426-29 (1996); Erie R. Co. v. Tompkins, 304 U.S. 64 (1938).

**V.    Analysis**

For the following rationale, the Court GRANTS summary judgment as to all of the claims.

*a.  Fraud*

Defendants argue that, as a matter of law, Plaintiffs cannot prevail on their claim of fraud. Plaintiffs respond by indicating that Defendants fraudulently induced them into the discussed transactions.  Plaintiffs claim that Defendants "intentionally and deceitfully concealed and misrepresented facts regarding their intentions with respect to the Plaintiffs' money, residential property and title, and Plaintiffs relied upon Defendants' willful, deliberate and deceitful misrepresentations to their detriment."  Plaintiffs' Amended Complaint at 24.

In Maryland, a prima facie case for fraud includes the following elements:

> (1) that the defendant made a false representation to the plaintiff, (2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth, (3) that the misrepresentation was made for the purpose of defrauding the plaintiff, (4) that the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) that the plaintiff suffered compensable injury resulting from the misrepresentation.

Alleco, Inc. v. Harry & Jeanette Weinberg Found., Inc., 665 A.2d 1038, 1047 (Md. 1995) (quoting Nails v. S & R, 639 A.2d 660, 668-69 (Md. 1994) (internal citations omitted); see also Gross v. Sussex Inc., 630 A.2d 1156, 1161 (Md. 1993).  Additionally, the false statement must be material and made knowing that it is false.  Id. at 1161-62.  ("Fraud is an intentional tort

requiring the defendant to know that his or her representation is false. This means the representation was made either knowingly or in conscious disregard of its truth.").

Essentially, Plaintiffs claim that Defendants misrepresented the intention behind the series of transactions at issue here and the implications thereof. As a matter of law, this claim fails. Mr. Tillery's deposition answers and the contracts of sale belie the claim of fraud. Plaintiffs fully understood the nature of their transactions with The Harrison Company. Plaintiffs' understanding is expressed in Mr. Tillery's deposition when asked about meeting with Mr. Harrison:

> Answer: "…The intention was to rent the property that we currently owned, settling the arrears situations that I recall, and at some point, we were hoping the near future, that we would be able to regain complete ownership of the home.
> Question: And was it your understanding based upon your communication with John J. Harrison that the scenario that would be pursued is that you would actually sell the property to someone, use the proceeds of that sale to catch up on existing debt and then you would become a tenant with the hope that in the future you would buy the property back?
> Answer: Pretty much, yeah.
> Question: Well, you say pretty much I mean, is there something that I missed just in the basic outline?
> Answer: No. That was pretty much what we understood it to be."

Defendants' Exhibit 5, Tillery Depo. at 28:4-21.[1] Plaintiffs' understanding of the transactions, including the sale of their home, lease, and option contract is evident throughout Mr. Tillery's deposition. See id. at 69:8-70:19, 93:15-95:8, 97:17-98:12, 104:5-105:9; 160:2-162:6.

Additionally, Plaintiffs' understanding of the transactions matches the authenticated documents provided to the Court and the eventual outcome of the transactions as described by both Plaintiffs and Defendants. See Defendants' Motion at 2-7; Plaintiffs' Response at 1-5. Plaintiffs do not allege that despite Defendants' promises, their debt was not paid. They also do not allege

---

[1] As Defendant Borden's Motion relies on the same exhibits produced in Defendants' Motion, the Court will do likewise.

that they were never given the option to lease the Property or to pursue the option to re-purchase the Property. The parties agree that Plaintiffs sold their house to The Harrison Company and the Harrison Company sold it to Mr. Borden. Plaintiffs then entered into a lease and option contract with Mr. Borden. The parties agree on the amounts of money transferred between and among the parties, as well as the debts paid on behalf of Plaintiffs. There are no material facts for a fact-finder to reconcile.

Plaintiffs signed the contract of sale and attached addendums. Aside from the general duty to read the contract, by signing General Addendum No. 1, Plaintiffs affirmed that they were competent to enter into the agreement and had an opportunity to seek professional legal and financial advice. Defendants' Exhibit 7, General Addendum No. 1 to the Tillery Residential Contract of Sale. Plaintiffs' signatures on each document indicate that they read the materials and were aware of their contents.[2]

As a matter of law, Plaintiffs cannot prevail on their fraud claim against any party in this lawsuit. The Court GRANTS summary judgment on this claim against Plaintiffs as to all Defendants.

> *b. Breach of Contract*

Defendants Harrison and Realty Executives argue that Plaintiffs cannot prevail on a breach of contract claim, because they were not parties to a contract with Plaintiffs.[3] They are correct.

It is well settled in Maryland that "normally a person cannot be held liable under a contract to which he was not a party."[4] <u>Snider Bros. Inc., v. Heft</u>, 317 A.2d 848, 851(Md. 1974).

---

[2] Defendants cite several cases regarding the binding nature of a signature. However, these cases all include the caveat that if there is no fraud, a signature is binding – thus those cases beg the question of fraud.

[3] Defendants Harrison and Realty Executives are mistaken that Plaintiffs claim a breach of contract against John Harrison. Rather, in Plaintiffs' Amended Complaint, Plaintiffs claim breach of contract against The Harrison Company and Realty Executives. However, Mr. Harrison's lack of liability is clear.

See also Mowbray v. Zumot, 533 F. Supp. 2d 554, 564 (D. Md. 2008); Mehul's Inv. Corp. v. ABC Advisors, Inc., 130 F. Supp. 2d 700, 707 (D. Md. 2001); Porter v. General Boiler Casing Co., Inc., 396 A. 2d 1090, 1094 (Md. 1979). Realty Executives did not contract with Plaintiffs and therefore cannot be liable for any breach of contract. It is clear from the face of the agreement that the only contract for sale of the Property was between Plaintiffs and The Harrison Company. Defendants' Exhibit 1, Tillery Residential Contract of Sale at 1. Realty Executives merely acted as the broker for the transaction. Id. Additionally, Plaintiffs signed the contract acknowledging that Realty Executives was the broker and as a broker, "do[es] not assume any responsibility. . .for the performance of this Contract by any or all parties thereto." Id. at 5.

In contracting with Plaintiffs, Mr. Harrison acted as an agent for The Harrison Company. As such, the inquiry becomes whether Mr. Harrison can be personally liable for the alleged breaches of The Harrison Company.[5] Fortunately, "[t]he Rule in Maryland is clear that 'if an agent fully discloses the identity of his principal to the third party, then, absent an agreement to the contrary, he is insulated from liability.'" Curtis G. Testerman Co., v. Buck, 667 A.2d 649, 653 (Md. 1995). In short, "if [Defendant] signed the contract on behalf of the Company, a disclosed principal, he cannot be held personally liable as an agent." Id.

Here, Mr. Harrison was acting on behalf of a fully disclosed principal, The Harrison Company. Defendants' Exhibit 1, Tillery Residential Contract of Sale at 1. Additionally, Mr. Harrison's signature on the contract is accompanied by "Pres." and "by" precedes his signature. This writing indicates that he was not signing for himself, but in his capacity as President of The

---

[4] All of these cases include that, although a person cannot be held liable under a contract to which he is not a party, that person may later accept or adopt the contract in some way and then become liable under it. There is no indication anywhere in the parties' submissions or in Plaintiffs' Amended Complaint that Plaintiffs make this specific argument as grounds for breach of contract.
[5] Mr. Harrison might be liable if Plaintiffs could pierce the corporate veil, however Plaintiffs have not made such a claim.

Harrison Company.  Defendants' Exhibit 1, Tillery Residential Contract of Sale at 10.  He repeats this mode of signature on several addendums to the contract of sale and on the "Deferred Street Improvement Cost and Special Assessments Addendum" it specifically lists The Harrison Company as the purchaser and "by John J. Harrison Pres."  Defendants' Exhibit 1, Tillery Residential Contract of Sale at 10-24.  Lastly, in his deposition Mr. Tillery demonstrated that he understood that he transferred title of the Property to The Harrison Company, and that the transaction was between himself and The Harrison Company.  Defendant's Motion, Exhibit 5, Tillery Depo., 84:7-12.  These indications are sufficient to render The Harrison Company a disclosed principal.  Testerman, 667 A.2d at 653 (where it was clear that the defendant signed a contract as an agent for a disclosed principal because the contract identified the corporation as the contractor, the signature line included the agent's name and "president.").  Because it is facially clear that Mr. Harrison was acting on behalf of a fully disclosed principal, he is fully insulated from liability resulting from that contract.  Id.  (When "upon the face of an agreement, a party contracting plainly appears to be acting as the agent of another, the stipulations of the contract are to be considered as solely to bind the principal.")

Neither Mr. Harrison nor Realty Executives are liable for breaches to the contract between Plaintiffs and The Harrison Company; they are not parties to the contract.  Consequently, the Court GRANTS summary judgment as to the breach of contract claim against Mr. Harrison and Realty Executives.

As for any breach of contract claim alleged against Mr. Borden, it is clear that he was not a participant in, or a signatory to, the contract of sale between Plaintiffs and The Harrison Company.  Defendants' Exhibit 1.  The only contracts between Plaintiffs and Mr. Borden are the

lease agreement (Defendants' Exhibit 3) and the option to purchase real estate agreement (Defendants' Exhibit 4).[6]

Plaintiffs have offered no record evidence to support the notion that Mr. Borden breached either the lease or the option to purchase agreement. In their opposition to the motion for summary judgment, Plaintiffs contend that Mr. Borden was acting as a "foreclosure consultant" when he fraudulently obtained title to their home. This bald assertion is insufficient to overcome a motion for summary judgment which is supported by record evidence. As Plaintiffs have failed to do so, the Court GRANTS summary judgment as to the breach of contract claim against Defendant Borden.

As for any breach of contract claim alleged against The Harrison Company, Plaintiffs again have offered no record evidence to support a breach of contract. Quite to the contrary, Plaintiffs' deposition testimony makes clear that The Harrison Company provided to Plaintiffs the benefit of their bargain. The record is clear that Plaintiffs cannot sustain a breach of contract action against any of the present Defendants as a matter of law.

### c. Breach of Fiduciary Duty

Plaintiffs assert in their Amended Complaint that "Defendants owed fiduciary duties to the Plaintiffs" and allege a breach of these duties. Defendants claim that no fiduciary relationships existed. Before the Court can reach the question of breach, it must first address whether a fiduciary duties existed. The Court finds that they did not.

In the context of a real estate transaction, "a real estate broker or salesperson is an agent for his principal, with incumbent fiduciary duties to that person alone. The broker cannot act for both the seller and buyer in the same transaction because of the potential conflict of interest."

---

[6] Interestingly both of these agreements were between Mr. Borden and Plaintiff Rebecca Taylor Tillery. Mr. Tillery was not a party to these agreements with Mr. Borden.

<u>Proctor v. Holden</u>, 540 A.2d 133, 142 (Md. Ct. Spec. App. 1988). Realty Executives was the broker for the buyer, The Harrison Company, in the sale of the Property from Plaintiffs to The Harrison Company. Defendants Exhibit 1, Tillery Residential Contract of Sale at 1. As The Harrison Company's broker, Realty Executives did not owe a fiduciary duty to Plaintiffs.

Mr. Harrison also did not owe Plaintiffs a fiduciary duty. Mr. Harrison is the president of The Harrison Company. "Corporate officers and directors are fiduciaries who are under a duty to act for the benefit of the corporation." <u>Leavy v. Am. Fed. Sav. Bank</u>, 764 A.2d 366, 372 (Md. Ct. Spec. App. 2001). <u>See also</u> <u>Shenker v. Laureate Educ., Inc.</u>, 983 A.2d 408, 420 (Md. 2009 ) ("It long has been established, by cases decided both prior to and subsequent to the Legislature's enactment of the duty of care for corporate directors contained in § 2-405.1(a), that directors of Maryland corporations stand in a fiduciary relationship to the corporations that they manage and the shareholders of those corporations"). In fact, "[t]his fiduciary duty… is not intermittent or occasional, but instead 'the constant compass by which all director actions for the corporation and interactions with its shareholders must be guided.'" <u>Storetrax.com, Inc. v. Gurland</u>, 915 A.2d 991, 1001 (Md. 2007) (quoting <u>Malone v. Brincat</u>, 722 A.2d 5, 10 (Del. 1939). As the president of The Harrison Company, and acting in his capacity as such, Mr. Harrison was an agent of The Harrison Company and had a fiduciary duty to act in the interests of The Harrison Company alone. He owed no fiduciary duty to Plaintiffs.

Realty Executives was clearly the broker for The Harrison Company, both in the transaction with Plaintiffs and also in the sale from The Harrison Company to Mr. Borden. Mr. Harrison was clearly acting on behalf of The Harrison Company in the sale of the Property from Plaintiffs to The Harrison Company and owed no fiduciary duty to Plaintiffs. Likewise, there is no factual support to suggest that Mr. Borden owed Plaintiffs a fiduciary duty. Plaintiffs

claiming that such existed without any reference to record evidence is fatal. Even assuming *arguendo* that such was produced, Plaintiffs have not demonstrated how such a duty has been breached.

Thus, as a matter of law, Plaintiffs cannot prevail on a claim of breach of fiduciary duty against any Defendant in this matter, and the Court GRANTS summary judgment on this claim.

### d. Conversion

Plaintiffs allege that Defendants converted real property, money, and title from Plaintiffs. Defendants argue that they could not have converted Plaintiffs' property or money because they never possessed it. In Maryland, "conversion is any distinct act of ownership or dominion exerted by one person over the personal property of another in denial of his right or inconsistent with it." Allied Inv. Corp. v. Jasen, 731 A.2d 957, 963 (Md. 1999) (quoting Interstate Ins. Co. v. Logan, 205 Md. 583, 588-89 (1954)). Conversion applies only to personalty, not real property, however, intangible property interests may also "be recovered through a conversion claim." Allied Inv. Corp. v. Jasen, 731 A.2d 957, 963 (Md. 1999).

First, Defendants are correct that neither Mr. Harrison nor Realty Executives ever owned or exerted dominion over the Property or property interests. The Property was transferred by contract of sale and transfer of deed from Plaintiffs to The Harrison Company and then from the Harrison Company to Mr. Borden. Defendants' Exhibit 1 at 1; Defendants' Exhibit 2 at 1. Mr. Harrison acted on behalf of The Harrison Company; title of the Property never transferred to him. Realty Executives acted as the broker for the sale, but it also never exerted ownership over the Property. Equally true, there is no evidence that Mr. Borden executed any document which divested Plaintiffs of title. The record evidence indicates that Plaintiffs lawfully conveyed their interest to the Property before any involvement by Mr. Borden, and thereafter Plaintiffs executed

additional documents to continue their use and possession of the Property which belonged to Mr. Borden.

Second, Defendants have presented sufficient evidence to demonstrate that, as a matter of law, Plaintiffs cannot prevail on a claim of conversion of money. "The general rule is that monies are intangible and, therefore, not subject to a claim for conversion. An exception exists, however, when a plaintiff can allege that the defendant converted specific segregated or identifiable funds." <u>Allied Inv. Corp. v. Jasen</u>, 731 A.2d at 966 (internal citations omitted). Defendants never exerted unlawful ownership or control over the funds from the sale of the Property. Money from the sale of the property was used to satisfy obligations on the Property and also to satisfy Plaintiffs' outstanding debt. Plaintiffs' Exhibit 5, Tillery Depo at 160:2-162:6. Equally, there is no evidence to support a claim that Defendants converted any interests in title that Plaintiffs may have owned.

As Plaintiffs have failed to demonstrate a genuine dispute of material fact to support the notion of conversion of property, money or title, the Court GRANTS summary judgment as to all Defendants regarding the conversion claim.

   *e. Unjust Enrichment*

In their Amended Complaint, Plaintiffs claim that Defendants "enjoy a benefit conferred on them by the Plaintiffs in the form of real property, record title and/or money belonging to and/or provided by the Plaintiffs" and "the Defendants understood and knew that they were being unjustly enriched at the expense of the Plaintiffs." Defendants rightly state that a claim for unjust enrichment may not be brought when the transaction is covered by an express contract. <u>FLF, Inc. v. World Publ'ns., Inc.</u>, 999 F. Supp. 640, 642 (D. Md. 1998) ("It is settled law in Maryland, and elsewhere, that a claim for unjust enrichment may not be brought where the

subject matter of the claim is covered by an express contract between the parties.").  Here, however, the express contracts covering the transactions were between The Harrison Company and the Tillerys and between The Harrison Company and Mr. Borden.  The express contracts do not govern the interactions between Plaintiffs and Realty Executive or between Plaintiffs and Mr. Harrison in his individual capacity.  Accordingly, the legal maximum relied upon by Defendants is misapplied to the latter relationships.

The elements for unjust enrichment are:  "1) A benefit conferred upon the defendant by the plaintiff; 2) An appreciation or knowledge by the defendant of the benefit; and 3) The acceptance or retention by the defendant of the benefit under such circumstance as to make it inequitable for the defendant to retain the benefit without payment of its value."  Mass Transit Admin. v. Granite Constr. Co., 471 A.2d 1121, 1125 (Ct. Spec. App. Md. 1984) (citing Everheart v. Miles, 422 A.2d 28, 31 (1980)).  See also Benson v. State, 887 A.2d 525, 546 (Md. 2005); Bank of Am. Corp. v. Gibbons, 918 A.2d 565, 569 (Md. 2007).  "At the heart of the concept of unjust enrichment is the willingness of the court under appropriate facts to say that there was an implied or constructive contract between the plaintiff and defendant."  Id. at 569-70.  There is no indication, either in the Amended Complaint, in deposition, or in other record evidence, that there was an agreement with the intent to create a contractual relationship between Plaintiffs and Mr. Harrison or Plaintiffs and Realty Executives.  Plaintiffs' Exhibit 5, Tillery Depo. at 28:4-21, 160:2-162:6.  See also Bank of Am. Corp., 918 A.2d at 569-70.

Additionally, "a person confers a benefit upon another if he gives to the other possession or some other interest in money."  Bank of Am. Corp., 918 A.2d at 569 (quoting Restatements of Restitution s. 1 cmt. a (1937, updated through 2006)).  As a matter of law, Plaintiffs cannot satisfy this first element of unjust enrichment.  Defendants have not "received a benefit by reason

of an infringement of another person's interest, or of loss suffered by the other." <u>Bank of Am.</u> <u>Corp.</u>, 918 A.2d at 569 (quoting <u>Berry and Gould v. Berry</u>, 757 A.2d 108, 112-13 (2000)). Again, Mr. Harrison was an agent for The Harrison Company and personally, did not receive "possession or some other interest in money" as a result of the transactions between Plaintiffs and The Harrison Company. The same is evident for Realty Executives. Plaintiffs also did not confer "possession or some other interest in money" on Realty Executives as a result of the transactions.

For the foregoing rationale, the Court GRANTS summary judgment as to all Defendants regarding the unjust enrichment claim.

*f. Breach of the Implied Covenant of Good Faith and Fair Dealing*

Plaintiffs allege that Defendants breached their duty of good faith and fair dealing to Plaintiffs. However, Defendants are correct in stating that no independent cause of action exists in Maryland for breach of the duty of good faith and fair dealing. <u>Mount Vernon Props., v.</u> <u>Branch Banking and Trust, Co.</u>, 907 A.2d 373, 375, 381-82 (Md. Ct. Spec. App. 2006). <u>See also</u> <u>Magnetti v. Univ. of Md.</u>, 90 A.2d 1101, 1104-05 n.3 (Md. Ct. Spec. App. 2006); <u>Swedish Civil</u> <u>Aviation Admin. v. Project Mgmt. Enters, Inc.</u>, 190 F. Supp. 2d 785, 793-94 (D. Md. 2002). Instead, in Maryland "a breach in the implied duty of good faith and fair dealing is better viewed as an element of another cause of action, e.g., breach of contract, than as a stand-alone cause of action for money damages." <u>Mount Vernon Props.</u>, 907 A.2d at 381-82; <u>see also</u> <u>Swedish Civil</u> <u>Aviation Admin.</u>, 190 F. Supp. 2d at 793-94. Because this independent cause of action does not exist in Maryland as claimed by Plaintiffs, summary judgment is GRANTED in favor of all Defendants on the claim of breach of the implied covenant of good faith and fair dealing.

*g. Civil Conspiracy*

Defendants argue that Plaintiffs' claim of "civil conspiracy to commit fraud" is unavailable as an independent cause of action in Maryland. They are correct. In Maryland, "'conspiracy' is not a separate tort capable of independently sustaining an award of damages in the absence of other tortious injury to the plaintiff." Alexander & Alexander, Inc., v. Dixon Evander & Associates, 650 A.2d 260, 265 n.8 (Md. 1994). See also Alleco, Inc. v. Harry & Jeanette Weinberg Found., Inc., 665 A.2d 1038, 1045 (Md. 1995). Instead, conspiracy acts as an aggravating element of the underlying claim. Alleco, Inc., 665 A.2d at 1045. "A conspiracy cannot be made the subject of a civil action unless something is done which, without the conspiracy, would give a right of action." Alexander & Alexander, Inc., 650 A.2d at 265 n.8 (quoting Robertson v. Parks, 76 Md. 118, 135 (1982).

Plaintiffs allege conspiracy to commit fraud, so the first inquiry is whether the underlying claim – fraud – withstands summary judgment. See Alleco, Inc., 665 A.2d at 1045. "The underlying tort is the cause of action that should be set forth in a separate count." Manikhi v. Mass. Transit Admin., 758 A.2d 95, 110 n.6 (Md. 2000).

Plaintiffs do allege fraud separately. However, as a matter of law, Plaintiffs cannot prevail on that claim. Because conspiracy is not a stand-alone claim in Maryland and because Plaintiffs cannot prevail on the would-be underlying fraud, Plaintiffs cannot prevail on a civil conspiracy claim. Consequently, the Court GRANTS summary judgment as to all Defendants regarding the civil conspiracy claim.

*h. Claims under Maryland Protection of Homeowners in Foreclosure Act*

Plaintiffs claim that their transaction with Mr. Harrison is "firmly within the category of transactions regulated" by the Maryland Protection of Homeowners in Foreclosure Act

("PHIFA").  Plaintiffs' Opposition at 6.  Defendants claim that at the time the PHIFA was

enacted, Plaintiffs were not "homeowners" under the Act and the Property was not a "residence

in foreclosure" as provided by the PHIFA.  In their argument, Plaintiffs neglect to address the

enactment date of the PHIFA, which was May 26, 2005.  2005 Md. Laws. Ch. 509 (approved

and enacted May 26, 2005).  Plaintiffs sold the property to the Harrison Company months before

PHIFA was enacted.  Additionally, The Harrison Company, in turn, sold the Property to Mr.

Borden before PHIFA's enactment.  Plaintiffs entered into settlement and closing with the

Harrison Company on February 14, 2005; title transferred to Harrison Company and the deed

was executed four months before PHIFA's enactment.

Under PHIFA, a "homeowner" is defined as "the record owner of a residence in default

or a residence in foreclosure, or an individual occupying the residence under a use and

possession order issued under Title 8, Subtitle 2 of the Family Law Article."  Md. Code Ann.,

Real Prop. § 7-301.  When PHIFA was enacted, Plaintiffs were no longer "homeowners" as

contemplated by the act.  Additionally, the Property was not a "residence in foreclosure" under

PHIFA.  For the purposes of PHIFA "residence in foreclosure" is "residential real property

located in the State consisting of not more than four single family dwelling units, one of which is

occupied by the owner, or the owner's spouse … as the individual's principal place of residence,

and against which an order to docket or a petition to foreclose has been filed."  Md. Code Ann.,

Real Prop. § 7-301.  At the time of PHIFA's enactment, the Property was no longer in

foreclosure, as the Harrison Company had paid the arrearages with the proceeds of the sale to

Mr. Borden.  By mid-March 2005, the foreclosure action against Plaintiffs had been dismissed

because the arrearages had been paid.  Plaintiffs' Exhibit 5, Tillery Depo. at 93:15-95:8.

PHIFA could apply to Plaintiffs if they remained the record owners of the Property and the Property remained in foreclosure after May 5, 2005.  Nothing in the record presented to the Court indicates this was the case.  Also, nothing in PHIFA itself indicates a retroactive application.  As such, the Court GRANTS summary judgment as to claim of violations of PHIFA against The Harrison Company and Realty Executives.

Plaintiffs also believe that PHIFA is applicable to the transaction involving Mr. Borden.  Once again, Plaintiffs miss the mark with respect to the applicability of the act, as Plaintiffs were not owners of a "residence in foreclosure" during the applicable period.  Equally true, the lease and option agreements are not governed by the act as Plaintiffs were not owners of the Property at the time the lease and option agreements became effective.  Therefore, the Court GRANTS summary judgment as to the claim of violation of PHIFA against Defendant Borden.

i.  *Aiding and Abetting Fraud*

Defendants argue that the Court should grant summary judgment as to aiding and abetting fraud because Plaintiffs allege both fraud and aiding abetting fraud and a party cannot both perpetrate a fraud and aid and abet the same fraud.  "Maryland has expressly recognized aider and abettor tort liability."  Alleco, Inc., 665 at 1049.  However, similar to conspiracy, aider and abettor liability "requires that there exist an underlying tortuous activity in order for the alleged aider and abettor to be held liable."  Id. at 1050.  Therefore, the analysis begins with whether Plaintiffs claim of fraud can sustain summary judgment.  The Court has already found that it cannot.  There is no indication that Plaintiffs' aiding and abetting claim references a fraud different than the one the Court already ruled upon.  Moreover, Plaintiffs have not provided any record evidence to suggest there is a dispute of material fact.  Consequently, the Court GRANTS summary judgment as to all Defendants regarding the aiding and abetting fraud claim.

*j. Injurious Falsehood, Disparagement, and Slander of Title.*

While listed as three different actions, this count actually represents a single claim with three aliases and is best known as a claim for injurious falsehood. <u>Horning v. Hardy</u>, 36 Md. App. 419, 373 A.2d 1273, 1277-78 (1977). As the Amended Complaint correctly spells out the elements for this cause of action, and Plaintiffs have failed to support the claim with record evidence.

In their Amended Complaint, Plaintiffs allege that Defendant Borden published and recorded a deed which was false and encumbered Plaintiffs' property. Plaintiffs also allege that Defendant Borden published and recorded two deeds of trust which were false and encumbered Plaintiffs' property. Neither document appears to have been published by Defendant Borden. Equally true, there is no indication that said documents are false. Plaintiffs have provided no evidence of Defendants acting with malice or reckless disregard for the truth. Plaintiffs have not demonstrated that the publication of these documents played a material or substantial part in inducing others not to deal with Plaintiffs or that they have suffered special damage. Plaintiffs have not demonstrated any actual damage they may have incurred. <u>See also</u> <u>National Bd. for Certification and Occupational Therapy, Inc. v. American Occupational Therapy Assn.</u>, 24 F. Supp. 2d 494, 511 (D. Md. 1998). Accordingly, the Court GRANTS summary judgment on the claim of injurious falsehood against Mr. Borden and The Harrison Company.

*k. The Maryland Equitable Mortgage Doctrine, Maryland Mortgage Lender and Secondary Mortgage Loan Laws.*

The law in the area of the equitable mortgage doctrine is very clear. Plaintiffs' contention that "the deed transfer from the Plaintiffs to Defendant Harry Borden, although a conveyance of property on its terms, must be considered a mortgage as a matter of law" is misplaced.

First, Plaintiffs did not convey a deed to Defendant Borden.  Second, Plaintiffs wrongly suggest that Md. Code Ann., Real Prop. §7-101(Lexis Nexis 2001), creates a common law equitable mortgage and provides no case law in support.  Third, as Plaintiffs are relying upon the conveyance of specific documents for the creation of an "equitable mortgage," case law defeats this attempt.  "Without exception, the instruments which we have held to be equitable mortgages have been ones which *on their face appear to be mortgages* but which were defective in some manner."  Pence v. NorWest Minnesota, NA, 363 Md. 267, 768 A.2d 639, 646 (Md. 2001)(emphasis in original).

It does not appear that the parties intended to create a mortgage and Plaintiffs' lack of record evidence does not fill this void.  Accordingly, the Court GRANTS summary judgment for the claim regarding the equitable mortgage doctrine as to Mr. Borden and the Harrison Company.

It is for this very same reason that Plaintiffs' claims asserting violations of the Maryland Mortgage Lender law and Maryland Secondary Mortgage Loan laws have no basis in fact or law. No mortgage was intended between Plaintiffs and Mr. Borden, and Plaintiffs have provided no record evidence to the contrary.  Accordingly, the Court GRANTS summary judgment as to these claims in favor of Mr. Borden and The Harrison Company.

In their Amended Complaint, Plaintiffs seek the imposition of a constructive trust and a resulting trust due to The Harrison Company and Mr. Borden recording a false claim of ownership regarding the property, and the acquiring of a monetary benefit from said transactions. As set forth above, the Court finds no basis in fact or law for the imposition of a constructive trust.  Quite to the contrary, the Court finds that the record evidence from Plaintiffs' deposition and other materials demonstrates that Plaintiffs are not entitled to the imposition of a trust of any

kind.  As the imposition of a constructive trust is an equitable remedy and that the Court has found that equity does not require the imposition of a trust, the Court hereby GRANTS summary judgment as to that claim as well.  The Court further finds on this record, that Plaintiffs have completely conceded their entitlement to any claim upon the property in that they have transferred all rights and interests to The Harrison Company.  The Court also finds on the record evidence, that The Harrison Company properly conveyed all of its rights and interests in the property to Harry Borden, who thereafter executed deeds of trust in favor of Defendant Lehman Brothers, a bona fide lender for value.  Plaintiffs have not demonstrated any right to title, let alone a superior right to title.  The Court finds on this record that Defendant Lehman Brothers is a bona fide lender for value and its deeds of trust are not void or voidable.

**VI.    Conclusion**

Defendants have met their burden under summary judgment.  As a matter of law, Plaintiffs cannot prevail on claims set forth in the Amended Complaint.  A separate Order consistent with this Memorandum shall issue.


Date:___September 3, 2010___                    _____/s/_____
                                                                        Charles B. Day
                                                                        United States Magistrate Judge